# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **MARK W. MCCOWAN,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:09CV00056 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Gerald F. Sharp, Gerald F. Sharp, P.C., Lebanon, Virginia, for Plaintiff; Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Mark W. McCowan filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits ("DIB") pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401–433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

McCowan filed for benefits in March 2007, alleging that he became disabled on May 15, 2006, due to coal workers' pneumoconiosis, swollen fingers with pain and stiffness, diabetes mellitus and diabetic neuropathy, neck and back pain, a pinched nerve in the right shoulder, hearing loss, insomnia, nervousness, and depression. His claim was denied initially and upon reconsideration. McCowan received a video hearing before an administrative law judge ("ALJ"), during which McCowan, represented by counsel, and a vocational expert testified. The ALJ denied McCowan's claim and the Social Security Administration's Appeals Council ("Appeals Council") denied his Request for Reconsideration. McCowan then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

McCowan was forty-two years old when he filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2009). McCowan graduated from high school and spent twenty-one years working as an underground coal miner. McCowan has not worked since 2006, when he quit his coal mining job due to his pulmonologist's recommendation that he avoid coal dust and other irritants.

McCowan states he cannot work due to his swollen and stiff fingers and joints, complications from diabetes, hypothyroidism, bulging discs, shoulder pain, hearing loss, sleep disorder, nervousness and depression, and various pulmonary problems related to coal workers' pneumoconiosis ("CWP").

McCowan is an insulin dependent diabetic, juvenile onset, which requires him to monitor sugar levels and to inject himself with insulin several times daily. McCowan states that he suffers from neuropathy in his feet due to the diabetes.

In 2004 and 2005, while working in the coal mines, McCowan sought chiropractic treatment for pain in his left shoulder and neck. McCowan sought additional chiropractic care in 2006 for back pain. An MRI taken that same year showed McCowan had "broad-based disk bulges" in his T4-T5 vertebrae and the C3-C4 vertebrae, which could be the cause of his left arm pain. (R. at 397.) McCowan sought treatment for his pain from a chiropractor, and was placed on work restrictions. After 30 days of treatment, the chiropractor released McCowan from active care and told McCowan he had no restrictions upon his work or activities.

In 2005, physicians diagnosed McCowan with CWP Category A after locating a mass in his lung. Physicians attributed the mass to the two decades McCowan spent working underground in the coal mines. Soon after the initial diagnosis, McCowan saw a pulmonologist, Salman Sheikh, M.D., who confirmed that McCowan suffered

from CWP and diagnosed McCowan with chronic obstructive pulmonary disease. Dr. Sheikh performed several tests and prescribed three different types of inhalers for McCowan.

In July 2006, an X ray revealed that McCowan's pneumoconiosis had progressed to Category B. A needle biopsy of McCowan's right lung confirmed that he suffered from advanced stage pneumoconiosis. McCowan continued to see Dr. Sheikh for follow up appointments. During these visits, Dr. Sheikh noted that McCowan did not suffer from wheezing or rales when he breathed, and that he did not appear to be in acute distress. To prevent McCowan's illness from worsening, the pulmonologist "strongly recommended" that McCowan completely abstain from any exposure to coal and mineral dust. (R. at 296.)

McCowan received ongoing pulmonary treatment from Dr. Sheikh until May 2008, and in August 2008, he began seeing Muhammad K. Gondal, M.D., as his pulmonologist. During the fall of 2008, Dr. Gondal noted that McCowan complained of exertional dyspnea and that his lung functional capacity was reduced. A pulmonary function study revealed that McCowan had a "mild obstructive small airway ventilatory impairment." (R. at 470.) X rays performed during the same visit revealed "no definite acute lung findings." (R. at 469.) Dr. Gondal continued McCowan on the three medications initially prescribed by Dr. Sheikh in 2005.

McCowan has also had his hearing and mental faculties evaluated. A 2006 audiological evaluation performed by a physician concluded that McCowan had "bilateral high and mid frequency sensorineural hearing loss," due to chronic noise exposure in the coal mines. (R. at 241.) At the referral of his attorney, McCowan saw a licensed clinical psychologist for a personality assessment and a mental status examination. The psychologist diagnosed McCowan with occupational and social adjustment problems as well as suffering from moderate major depressive disorder. The psychologist opined that McCowan could think coherently and had normal memory and judgment limits, but he needed psychiatric treatment and medication.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the ALJ's role to resolve evidentiary conflicts, including evidentiary inconsistencies. This court may not substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The ALJ found that McCowan had not worked during the period of alleged disability and that he suffered from the following severe impairments: coal miner's pneumoconiosis with right upper lobe irregularity; COPD; diabetes; high and mid frequency sensorineural hearing loss; and cervical and thoracic spinal pain. The ALJ concluded, however, that these conditions did not meet the severity of a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1 (2009). The ALJ concluded that McCowan could not perform his past work as a coal miner, but McCowan could perform a number of light exertion jobs such as a cashier or assembler. Ultimately, the ALJ concluded McCowan was not disabled.

McCowan argues that the ALJ made three significant errors, which warrant remanding the case for reconsideration. First, McCowan asserts that the ALJ should not have given significant weight to the opinions of state-agency physicians who did not examine McCowan. Second, according to McCowan, the ALJ did not properly

consider and weigh McCowan's descriptions of his symptoms, illnesses, and pain. Third, McCowan asserts that the case should be remanded because the ALJ did not have the opportunity to review "a lot of additional medical evidence," which McCowan submitted to the Appeals Council. (Pl.'s Br. 8.) These arguments, however, do not warrant a remand of this case.

I disagree with the assertion that that the ALJ erred by giving significant weight to the opinions of the state-agency physicians. The record is repleat with evidence supporting the experts' opinions and the ALJ's reliance upon their conclusions.

The two state-agency physicians who reviewed McCowan's file came to different conclusions. Richard Surrusco, M.D., opined that McCowan was capable of performing a range of medium exertional work. Joseph Duckwall, M.D., opined that McCowan could perform light exertional work. After considering their opinions, the ALJ determined that McCowan could perform light exertional work. While Drs. Duckwall and Surrusco did not have access to the plethora of medical records McCowan submitted to the Appeals Council, the doctors did review records related to McCowan's chiropractic visits, hearing exam, diagnosis and treatment for CWP at the initial and advanced stages, and COPD. After reviewing these documents the state-agency physicians reached the same conclusion as McCowan's treating

physicians: McCowan's medical ailments did not completely prevent him from working. Thus, the ALJ did not err by deciding to place significant weight on the decisions made by these doctors.

McCowan also argues that the ALJ erred by not properly assessing McCowan's credibility about the intensity, persistence, and limiting effects of his symptoms. This assertion is incorrect because substantial evidence supports the ALJ's conclusion.

McCowan complains of disabling neck and back pain as well as a pinched nerve in his right shoulder. But there is no indication in his chiropractic records, or records from his treating physicians, that his alleged orthopedic ailments prevented him from working. In fact, McCowan's chiropractor released him from active care in 2006 and informed him that he faced no further physical restrictions. Given this diagnosis, it would be difficult for any ALJ to conclude that McCowan suffered from disabling back, neck, or shoulder pain. Similarly, the ALJ did not err in discounting McCowan's credibility as to his alleged limitations from swollen fingers, diabetes and diabetic neuropathy, and hearing loss. The medical records from McCowan's visits to physicians give no indication that his diabetes, or complications from it, caused him to suffer disabling pain. And, the scores of medical records from the 1990s, which McCowan's supplied to the Appeals Council, do not state that McCowan's diabetes caused the symptoms or pain from which he allegedly suffers. Added to this

is the fact that when McCowan sought medical assistance for his diabetes in 2008, the doctor stated McCowan's diabetic foot exam was "normal" (R. at 440) and, that McCowan did not suffer from diabetic complications. In addition, when McCown visited his pulmonologist in 2008 and 2009, the doctor noted that McCowan suffered from diabetes, but the doctor did not state that McCowan's diabetes was disabling.

Thus, contrary to McCowan's assertions, the ALJ did consider McCowan's medical records and the opinions offered by various physicians. The ALJ's conclusion mirored the conclusions reached by McCowan's treating and consulting physicians: McCowan suffers from severe medical impairments, but he is not disabled by his alleged pain or symptoms.

Finally, McCowan asserts that this case should be remanded to the ALJ so she may consider the hundreds of pages of medical records that McCowan submitted to the Appeals Council. McCowan believes that the ALJ did not give his claims of pain and disabling illnesses credence because the ALJ's concluded that prior to 2008, McCowan "did not seek consistent and ongoing treatment for" his diabetes.

This argument is wrong for several reasons. First and foremost, the ALJ's conclusion about McCowan's credibility as to his diabetes rests upon the fact that McCowan does not suffer from ailments commonly related to diabetes such as retinopathy or feet problems. Second, even if the ALJ had relied upon McCowan's

extensive medical records from the 1990s, the documents do not indicate that McCowan suffered from a disabling diabetic condition. At most, the medical records show that McCowan sought medical assistance when his blood sugar levels fluctuated. The more recent medical records McCowan gave to the Appeals Council fail to bolster his assertion that the ALJ erred. Rather, these records indicate that McCowan's diabetes and pumonary ailments do not prevent him from working.

Thus, even if the ALJ had considered the additional medical records, the documents would not alter the fact that substantial evidence exists to support the conclusion that McCowan is not disabled.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: July 1, 2010

/S/ JAMES P. JONES
Chief United States District Judge